# Supreme Court Decisions.

---

## TRIAL FOR MURDER—INDICTMENT—QUALIFICATION OF JUROR.

### LINDSEY v. THE STATE OF OHIO.

69 Ohio State—Decided, November 17, 1903.

*Plea in Abatement must be clearly Stated—Plea stating Defendant was Required to take Oath—But does not State how he was Compelled to take Oath, etc.—Is bad on General Demurrer, When—Juror being Examined States he has Formed an Opinion—From What he had Read and Talked about to Co-defendants—Shown that his opinion Rested mainly on Suspicion—But not upon real Facts—Held he might Overcome his bias and render a fair Verdict—Qualifications of a Juror—Challenge for Cause—Indictment for Robbery and Intentional Killing—Sufficiently charges Murder in Second Degree, When—Word "Malice" not Necessarily Employed in Indictment—Form of Charge by Court as to Several Degrees of Murder, etc.—Question of Error—Pleadings—Criminal Law.*

1. A plea in abatement to an indictment, while not required to be worded with the strictest technical and verbal accuracy, yet the matter pleaded therein must be clearly and distinctly stated, and must embrace facts as distinguished from conclusions. Hence a plea which states that the defendant was required, against his will, to take an oath and give testimony before the grand jury concerning a case then being investigated against the defendant and his co-defendants, but which does not state how he was thus compelled to take an oath, nor that he refused to take it, nor that he claimed his privilege of refusing to testify, and which fails to show what he testified to, or that his testimony was material concerning any fact necessary to be proven by the State to justify the finding of an indictment, or that there was not testimony other than that of defendant before the jury sufficient to justify such indictment, is bad on general demurrer.

2. A juror being examined on his *voir dire*, stated that from what he had talked and read about trials of co-defendants he had formed an opinion against the defendant which it would require testimony to remove, although he had nothing personally against him, and that the fact that the defendant had been indicted would have weight with him unless defendant proved himself not guilty, and as the case stands would require the defendant to prove his innocence; but it did not appear that he had talked with or read the testimony of any witness, or had talked with anyone claiming to have knowledge of the facts, and it was shown on further examination that his opinion rested principally on the suspicion that the defendant was one of the gang that committed the crime, but that he did not assume to know that to be a fact, and that if the court should instruct that he need not consider the fact that the defendant had been indicted he could lay aside that fact and not consider it in evidence against him, and finally that, notwithstanding any previous bias, opinion or prejudice, he could render a fair and impartial verdict according to the law and the evidence, and the court, so believing, overruled the defendant's challenge for cause. *Held:* That the facts did not show an abuse of discretion in so overruling the challenge. *McHugh* v. *The State*, 42 Ohio St., 154, and *Goins* v. *The State*, 46 Ohio St., 457, approved and followed.

3. An indictment, which charges, in proper form, an attempt to commit a robbery, and then avers that the defendant, with others, in such attempt, did unlawfully and purposely, by means of a revolver loaded with gunpowder and a leaden bullet, shoot the deceased, with intent to unlawfully and purposely kill and murder him, and did, by means of the shooting, strike, penetrate, and wound him, with intent unlawfully and purposely to kill and murder him, thereby giving him a mortal wound from which he instantly died, and that by these means, they did unlawfully, purposely, and in an attempt to perpetrate a robbery, kill and murder the deceased, sufficiently charges murder in the second degree, although the word *malice* is not employed in the indictment in describing the act.

4. It is not error in such case for the court, in connection with proper instructions with respect to the several degrees of murder, and as to assault and battery, to charge, if the facts proven warrant it, as follows: "Has the State established by clear, convincing and satisfactory evidence beyond a reasonable doubt, that the defendant is guilty as charged in the indictment or of some other degree of murder or manslaughter, or it may be assault and battery, or assault merely; otherwise your verdict should be not guilty."

Error to the Circuit Court of Wyandot County.

At the January Term, 1901, of the Common Pleas of Wyandot, the plaintiff in error, Marsh Lindsey, with four others, was indicted for murder in attempting to perpetrate a robbery. The grand jury was a special one. It investigated but one case, and found only one indictment. In substance the indictment charged that the defendants in and upon one William C. Johnson then and there being, unlawfully and forcibly did make an assault, with intent then and there, forcibly and by violence and by putting him in fear, to take from the person and against the will of him the said William C. Johnson, the money and personal property of great value, of him the said William C. Johnson, and then and there the said William C. Johnson to rob, and the money and personal property aforesaid to steal, take and carry away; and that the said defendants (naming them). and then and there did attempt unlawfully, forcibly, and by violence, and by putting him in fear, to take from the person and against the will of said William C. Johnson, the money and personal property of great value to him, the said William C. Johnson, with the intent thereby then and there the said William C. Johnson to rob, and the moneys and personal property aforesaid, to take, steal and carry away; and that the said defendants. (naming them) a certain revolver then and there loaded and charged with gunpowder and one leaden bullet, which said revolver they the defendants (naming them) in their right hands then and there had and held, then and there unlawfully and purposely, and whilst engaged in said attempt to perpetrate a robbery in and upon the said William C. Johnson as aforesaid, did discharge and shoot off against and upon the said William C. Johnson, with the intent the said William C. Johnson unlawfully and purposely to kill and murder; and that the said defendants (naming them) with the leaden bullet aforesaid, so as aforesaid by them the said defendants (naming them) by force of the gunpowder aforesaid then and there discharged and shot out of the revolver aforesaid, then and there unlawfully, purposely and whilst engaged in said attempt to perpetrate a robbery in and upon said William C. Johnson, as aforesaid, did him the said William C. Johnson strike, penetrate,

and wound, with intent him the said William C. Johnson unlaw-
fully and purposely to kill and murder, thereby then and there
giving to him the said William C. Johnson, in and upon the
abdomen and into the body of him the said William C. Johnson,
one mortal wound from which the said William C. Johnson then
and there instantly died. And so the jury aforesaid, upon their
oaths and affirmations aforesaid do say that the said defend-
ants (naming them) him, the said William C. Johnson, in the
manner and by the means aforesaid, unlawfully, purposely and
in the attempt to perpetrate a robbery, did kill and murder,
contrary to the statute, etc.

To his indictment there was filed a motion to quash, which
was overruled. Then followed a plea in abatement, the material
parts of which repeat substantially one ground stated in the
motion to quash, and are as follows:

"The new grand jury investigated the case against this de-
fendant and his co-defendants and none other, and all being the
same transaction, and that while said grand jury were investi-
gating said case, and during the time of the trial of this case
was in progress before the grand jury which returned the indict-
ment herein, and while said grand jury was investigating the
charge against him, the charge with which he is now charged
in the indictment herein filed, he was required by the State of
Ohio, and by writ of subpœna duly issued by the clerk of this
court, upon a precipe for that purpose filed by the prosecuting
attorney of said county, to appear before said grand jury, and
was, against his will, required to and did take an oath as a wit-
ness, and was, against his will, required to and did appear before
said grand jury, and before them he was required, against his
will, to give testimony in this case concerning the charge against
him. Defendant says he did not, neither was he permitted to
have counsel to advise him concerning his rights herein. That
he was by the prosecuting attorney and sheriff of said county
required to dress himself against his will, as the person or
persons who committed the crime for which he stands charged
were dressed or appeared to be dressed, by those who saw
them at the time the said crime was committed; and while so
dressed this defendant was against his will, required to walk,
talk and exhibit himself in the presence of the prosecuting
witness and other witnesses for the State to enable them to
testify before the grand jury as to whether or not this defend-
ant was the person who committed the crime with which he now

stands charged, and certain witnesses after. having seen this
defendant so disguised as aforesaid appeared before said grand
jury and gave testimony against him as to his identity in this
case; all of which is as he believes in violation of the rights
of this defendant, who is a citizen of the United States and of the
state of Ohio.''

A demurrer to this plea in abatement was sustained. A plea
of not guilty was then entered and trial had. Divers exceptions
were taken during the impanneling of the jury which are con-
sidered in the opinion. The jury returned a verdict of guilty
of murder in the second degree and not guilty of murder in the
first degree. Motion for new trial being overruled, sentence
followed. On error to the circuit court the judgment and sen-
tence of the common pleas was affirmed, and the prisoner brings
error here.

*E. T. Dunn, W. H. Hare* and *John W. Winn,* for plaintiff in
error.

*Benjamin Meck,* Prosecuting Attorney, for defendant in error.

SPEAR, J.; DAVIS, SHAUCK and PRICE, JJ., concur; BURKET,
C. J., and CREW, J., dissent.

First in natural order come the questions arising on the
motion to quash and the plea in abatement. These may be
treated together. A motion to quash may be made when there is
a defect apparent upon the face of the record, and a plea in
abatement may be made when there is a defect in the record
which is shown by facts extraneous thereto. It is not, however,
now seriously urged that the indictment is defective in form,
and it is practically conceded that the motion to quash was
properly overruled. It was the judgment of the courts below
that the plea in abatement was insufficient on two grounds—
one, that it was bad for indefiniteness in that it alleges con-
clusions rather than facts, and another that it fails to show
that the defendant was in any wise prejudiced by the facts
alleged.

We are of opinion that the courts were right on both grounds.
It is not necessary to hold that facts relied upon in a plea in
abatement should be worded with the strictest technical and

verbal accuracy, as is held in many cases, yet it is the rule that
the facts must be pleaded, as held in *Wagner* v. *The State,*
41 Ohio St., 537, with exactness, and the plea is to be strictly
construed. The reason is apparent. It is a dilatory plea. The
rule is given in Bishop's Criminal Procedure, Section 327, thus:

"In these, such as pleas in abatement and the like, it is nec-
essary to employ extreme certainty. An excellent work on
pleading (Gould's Pl., p. 84), stating that this superlative
certainty 'requires the utmost fullness and particularity of
statement, as well as the highest attainable accuracy and pre-
cision, leaving on the one hand nothing to be supplied by in-
tendment or construction; and on the other no supposable
special answer unobviated.' It is a rule, not of construction
only, but also of addition; that is, it requires the pleader, not
only to answer fully what is necessary to be answered, but also
to anticipate and exclude all such supposable matter as would,
if alleged on the opposite side, defeat his plea."

The plea in this case avers that the defendant was required
to and did take an oath as a witness, and was required to and
did appear before the grand jury, and was required against his
will to give testimony in this case concerning the charge against
him. But the plea does not state that he refused to take an
oath, nor in what manner, nor by what means, he was required
against his will to take an oath; nor does it allege that the
defendant, when before the grand jury, claimed his privilege,
or refused to answer any question, or in any manner objected to
appearing as a witness and to testifying. There is no law that
could compel the witness to testify to matters which would in-
criminate himself, or to punish him for refusing. If he did
not object how could there be compulsion? For all of any
statement of fact which appears he took the oath voluntarily
and testified voluntarily. Where a privilege to refuse exists
and the witness testifies without objection, the natural inference
is that he testifies voluntarily. Indeed the only feature which,
according to the facts stated, is shown to have been involuntary,
was the appearance in obedience to the subpœna. That would,
in and of itself, be regarded of compulsory process.

The same may be said with regard to the complaint that he
was required to dress, walk and talk and exhibit himself so

dressed before persons who afterward testified before the grand jury. Facts are not stated which show that this was compulsory. The averment, also, that he was not permitted to have counsel to advise him concerning his rights is equally a conclusion. It does not appear that he desired to have counsel, or was in need of counsel, nor that he was at the time upon trial for any crime or offense.

But, aside from the foregoing, how stands the case? The proposition of the plaintiff in error is that the indictment should have been held bad because a constitutional right of the defendant had been violated. That is, the grand jury and the prosecuting officer should be rebuked for improper practice without regard to whether the defendant had been thereby prejudiced or not. We are not commending the practice of subpœnaing persons suspected of crime as witnesses before a grand jury which has been summoned to inquire respecting that crime; indeed we do not hesitate to characterize it as improper practice. But the question is, What effect that mere fact ought to have in a test of an indictment otherwise regular and valid? It is of importance to note that this plea does not show that the defendant testified against himself, or that he testified to any fact material to the inquiry, or that the testimony he gave was of consequence in the deliberations of the jury, or that there was not other testimony before the jury upon which the indictment might have been properly found; on the contrary, for all that appears in this plea, there was abundant competent evidence, by competent witnesses before the jury, and the jury in fact found the indictment wholly upon such other competent testimony. Speaking more specifically, the plea does not show that some one material fact, and what material fact, was testified to by the defendant without which an indictment could not have been found, which fact was not testified to or established by other witnesses. The statement simply is that he was required "to give testimony in this case concerning the charge against him."

A like test shows the insufficiency of the plea that he was required against his will to dress and exhibit himself before persons who afterwards testified before the grand jury against him as to his identity in this case. Suppose this to be just as

stated, for all that appears, witnesses other than the ones referred to gave testimony to the grand jury as to identity abundantly supporting the charge.

It results that, so far as this inquiry is concerned, the case stands just as it would had Lindsey not testified before the grand jury. Why, then, should the indictment be held bad and the proceedings in the courts below go for naught? Our statute, Section 7252, provides that upon an adjudication in favor of the accused on a plea in abatement, he may be committed or held to bail for appearance at the next term. It would follow, simply, that another grand jury would be summoned, impanneled, and the testimony other than that given by Lindsey be presented in all respects like the one on which the trial was had. So the ; again the court would be precisely where it was when the trial was entered upon. How could such circumlocution aid the cause of justice? How would the people gain, or the citizen be more secure in his rights, by all this needless delay and expense? We think it quite necessary to consider further the much discussed question of the constitutional right and privilege of the citizen arising under Section 10 of our Bill of Rights. No case is made on the facts calling for such discussion. Other allegations appear in the plea, but they are irrelevant because contradicting the record, and need not be further noticed.

2. Exceptions were taken to the overruling of challenges made to several of the petit jurors on the ground of previous opinion and prejudice. The instance of Louis Cross is a sample. He was questioned by counsel for defendant and answered:

"*Q.* From all you have talked and read about these other trials state whether you have at any time formed any opinion in your mind as regards the guilt or innocence of the defendant? *A.* I think I did have an opinion.

"*Q.* Is that opinion with you still? *A.* Yes, sir.

"*Q.* I want to inquire if it would require any testimony to remove the opinion you have now formed? *A.* Well, yes; I think it would.

"*Q.* And the opinion that you now have is against the defendant, is it not? *A.* I have nothing that would decide against that I know of; I have nothing against him at all.

"*Q.* The question now is, whether the opinion you think you have is against the defendant? *A.* Yes, it would be against him.

"*Q.* It would take sworn testimony to remove that opinion, would it not? *A.* It would take some testimony; yes.

"*Q.* So when you start into the investigation of this case you would not begin exactly fair and even between the State and defendant, would you? *A.* Well, I think I could start about even with this man in this case.

"*Q.* Tell us how you could start in even with an opinion against the defendant in the jury box? *A.* Well, my opinion is if he was in the gang that murdered Mr. Johnson, I would have some opinion of him.

"*Q.* Yes, so would everybody. *A.* That is all I would have against him; that is all I could say against this man now, because I don't know; I don't know what he may do or ] )ve.

"*Q.* But I understand you to say it would ta .e testimony to remove the opinion you now have? *A.* Well, of course, it would.

"*Q.* Your opinion is against the defendant; that he was possibly one of the gang. *A.* Yes, sir.

"*Q.* That is what you think about it? *A.* Yes, sir.

"*Q.* And it would take sworn testimony to remove that conclusion of yours. *A.* Yes, sir.

"*Q.* Then when you start into this jury with the notion that this defendant is one of the gang, to that extent you would be prejudiced against him? *A.* That far I would.

"*Q.* You are aware that the grand jury has returned an indictment against this defendant for murder in the first degree? *A.* Yes, sir.

"*Q.* I want to inquire of you if the fact that they have returned such indictment into this court and endorsed as a true bill, if that fact in your mind would bear any weight against the defendant? *A.* It would unless he proved himself not guilty.

"*Q.* Yes, you would require of him to prove he was not guilty? *A.* Yes, sir.

"*Q.* As you now stand with your present notion about the case you would require the defendant to prove his innocence, would you? *A.* Yes, sir.

"*Q.* Now to that extent you are prejudiced against him, are you not? *A.* Of course, I will be prejudiced against him until he proves himself clear.

"By DUNN: We tender challenge for cause."

When questioned by the prosecuting attorney the juror answered:

"*Q.* If the court should tell you that the fact that he is indicted for murder is no evidence that he is guilty of murder, would you lay aside any prejudice you might have by reason of the indictment? *A.* Yes, sir.

"*Q.* Have you any opinion now whether the defendant, Marsh Lindsey, is guilty of this offense? *A.* Yes, sir—

"*Q.* Well, if you have any explanation you may offer it. *A.* My opinion is he was guilty if he was in the gang with these other fellows; if he don't prove himself—

"*Q.* But you don't know now whether he was in the gang or not? *A.* No, sir.

"*Q.* Then if you don't know he was in the gang how can you have an opinion as to whether he is guilty or not? *A.* I don't know whether he is guilty or not; I can't tell anything about that.

"*Q.* What do you mean by saying to the lawyer that you had an opinion as to his guilt or innocence? *A.* Did I say he was guilty?

"*Q.* No, but he finally got you to say you had an opinion as to his guilt or innocence; if there is any mistake about that, correct it. *A.* I have no opinion that he is guilty.

"*Q.* You have not? *A.* No, sir.

"*Q.* Have you an opinion now that he was in the gang? *A.* Not any more than as they have indicted him.

"*Q.* But if the judge here on the bench should tell you that you need not consider that fact against the defendant, could you lay aside the fact that he was indicted and not consider that as evidence against him? *A.* I think I could.

"*Q.* Let me ask you; could you, notwithstanding any bias, opinion, or prejudice that you may have, render a fair and impartial verdict according to the law and the evidence? *A.* Yes, sir."

The sum and substance of this is that the juror, from what he had heard and read respecting the trials of co-defendants, had formed what he called an opinion against the defendant which it would require some testimony to remove, but which was in no way against this person unless he was one of the gang which committed the crime, and which was based in part upon the fact that he had been indicted with the others. It does not appear that he had talked with any witness, or with any one claiming to be acquainted with the facts, or had read what purported to be the testimony of any witness. It does appear, on the other hand, by his statements, that the opinion

was that the defendant is guilty if he was in the gang with the other fellows, and that he has no opinion that he is guilty independent of that, and the further fact that he had been jointly indicted with them. As to this he also stated that if the court should instruct that he need not consider the fact that defendant was indicted he could lay aside that fact and not consider that as evidence against him. And, finally, being asked, he stated that, notwithstanding any bias, opinion or prejudice, he could render a fair and impartial verdict according to the law and evidence. The court, having the juror before him, was of opinion that he could render an impartial verdict and overruled the challenge. The juror was then challenged peremptorily by defendant.

We are not prepared to say that this ruling was an abuse of discretion on the part of the court. Our statute, Section 7278, provides:

"* * * if a juror has formed * * * an opinion * * * the court shall thereupon proceed to examine such juror as to the grounds of such opinion; and if such juror shall say that he believes he can render an impartial verdict notwithstanding such opinion, and if the court is satisfied that such juror will render an impartial verdict on the evidence, it may admit him as competent to serve in such case as a juror."

The facts present a case much less extreme than was present in *Goins* v. *State*, 46 Ohio St., 457, where it is held that:

"A juror who states on his examination that he has formed an opinion on a matter affecting the guilt of the defendant, from having heard the circumstances of the crime related by one who claimed to know them, may nevertheless be competent to sit as a juror if he says on oath that he believes he can render an impartial verdict in the case, and the court is satisfied he can do so. The fact that the court admitted him to sit as a juror is a sufficient finding that it was satisfied he could render an impartial verdict."

The case at bar is essentially different in its facts from *Palmer* v. *The State*, 42 Ohio St., 596, cited and relied upon by counsel for plaintiff in error, and is not controlled by it. It is, however, on all fours as to the essential facts with *McHugh* v. *The State*,

42 Ohio St., 154, where the overruling of the challenge was sustained. A case presenting good grounds for challenge, and in striking contrast to the case last cited, and to the case at bar, is that of *Frazier* v. *The State*, 23 Ohio St., 551, where the refusal to sustain the challenge is held to be error.

In passing it may be remarked that jurors are usually not mental philosophers, nor are they experts as to the law of criminal evidence. The shrewd lawyer, in examining them upon their *voir dire, invariably* puts the question as to the forming of an opinion, and the juror, having perhaps in reality but a casual impression respecting the case, is quite certain to dignify his state of mind by the adoption of the term used by the lawyer and call it an opinion. While alike in kind there is an essential difference between the two in degree. An opinion, such as is contemplated by our statute, is well defined as being "a conclusion or judgment held with confidence, but falling short of positive knowledge." An impression, as applied to this subject matter, is correctly defined as "a notion, remembrance, or belief, especially one that is somewhat indistinct or vague." It is quite apparent, from all that this juror stated, that his state of mind respecting Lindsey's connection with the crime of which he stood charged was of the latter class. We, all of us, in our everyday life, receive impressions respecting a thousand subjects and events which do not reach the dignity of opinions, and which change or fade away entirely upon being subjected to the effect of counter-information or further light. If such impressions should be held to conclusively disqualify a juror the obstacles to securing jurors would, in this age of newspapers, be well nigh insuperable. And that a juror should not, unless advised, comprehend the office and legal effect of an indictment, or the rule of law respecting the presumption of innocence, is not a matter of wonder, and does not afford ground for challenge.

3. It is also insisted that the verdict of murder in the second degree can not be sustained under this indictment, our statute (Section 6810), providing that:

"Whoever purposely and maliciously    *    *    *    kills another is guilty of murder in the second degree."

The specific claim is that the word "malice" in defining the act of killing, is not found in the indictment. This statement is true. It is true, also, that Section 7217, Revised Statutes, provides that in an indictment for murder in the second degree it shall be sufficient to charge that the defendant did purposely and maliciously kill the deceased. This section does not, however, provide that the words stated are indispensable, and are the only words that may be sufficient in an indictment in defining that crime. The section makes it unnecessary "to set forth the manner in which, or the means by which, the death was caused," but an inference does not follow that the indictment may not set forth the manner or the means by which the death was caused, nor that, if such manner and means, as set forth, necessarily import malice and that the killing was therefore maliciously done, that is not the equivalent of a direct charge that the defendant did maliciously kill. It is held in *Robbins* v. *The State,* 8 Ohio St., 131, that "intentional killing by means of administering poison, includes and *per se* imports malice." If the inference follows in a killing by administering poison why not in a killing while committing, or attempting to commit, a robbery, as both offenses are covered by the same section of the statute (Section 6808), which reads:

"Whoever purposely and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree and shall be punished by death, unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life."

Evidently the legislative purpose, in enacting this section, where the murder is charged as murder in an attempt to rob, was to cause an averment of that fact to become a substitute for the averment of deliberation and premeditation required to be charged in terms in the usual indictment for murder in the first degree. The indictment does charge in apt words the attempt to rob, and then that the defendant, with others, did unlawfully and purposely discharge their revolver, loaded with gunpowder and a leaden bullet, and by that means did shoot

Johnson with the intent to unlawfully and purposely kill and murder him, and did by means of the shooting, strike, penetrate and wound him with the intent to unlawfully and purposely kill and murder him, thereby giving to him a mortal wound from which he instantly died; and that, by these means, they did unlawfully and purposely kill and murder him. Now, when it is remembered that the rule in Ohio, is and from the earliest time, as shown by the holdings in *The State* v. *Turner*, Wright, 20, and *The State* v. *Town*, same volume, 75, down to *Davis* v. *The State*, 25 Ohio St., 369, has been that "where the fact of killing is proven, motive is to be presumed," and *Weaver* v. *The State*, 24 Ohio St., 584, that "the shooting with intent to kill being established, the law implies malice; and the malice thus implied can only be rebutted by showing circumstances of justification or excuse," it would seem that the absence of the word malice from the indictment ought not to render it insufficient as to a charge of murder in the second degree. What necessity we ask, can there be of incorporating a specific word in an indictment when the full meaning and purpose of such word is conclusively to be inferred from the words which are therein used?

4. The claim is further made that the verdict can not be sustained because it should have been either for murder in the first degree, or an acquittal, and that the trial court erred in its charge to the jury. This in face of the fact that, at the request of defendant's counsel, the court charged the jury that:

"The law and the evidence should be their, the jury's, only guide in determining the guilt or innocence of the defendant. Has the State established by clear, convincing and satisfactory evidence beyond a reasonable doubt, that the defendant is guilty as charged in the indictment, or of some other degree of murder, or of manslaughter, or it may be assault and battery, or assault merely; otherwise your verdict should be not guilty."

Forms of verdicts were given the jury covering each class of offenses referred to, and, consistent with the instructions, the jury found murder in the second degree. We see no error in this action of the court prejudicial to the defendant. The language of the instruction is not entirely happy, but the principle covered is not incorrect as applied to the case. It is in

accord with the holdings of this court in *Robbins* v. *The State, supra, Beaudien* v. *The State,* 8 Ohio St., 634, and *Adams* v. *The State,* 29 Ohio St., 412, which latter was a robbery case. Our statute, Section 7316, provides:

"Upon any indictment the jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit the same, if such attempt is an offense; when the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any inferior degree; and if the offense charged is murder, and the accused be convicted by confession in open court, the court shall examine the witnesses, and determine the degree of the crime, and pronounce sentence accordingly."

But the case of *Dresback* v. *The State,* 38 Ohio St., 365, is cited and relied upon as sustaining the claim of plaintiff in error on this point. That was a poisoning case. The syllabus is:

"On the trial of an indictment for murder in the first degree, charging the accused with purposely killing another by administering poison, the evidence tending to show no other grade of offense, it is error to charge the jury to the effect that if they find the accused guilty their duty will be fulfilled by convicting of murder in the first or second degree, or manslaughter. And where the verdict is returned for a lower grade of homicide than murder in the first degree, a new trial should be granted, where it appears from the evidence that a verdict of acquittal might have been rendered had the jury been properly instructed."

Owing to the meagerness of the statement we are unable to ascertain exactly what the facts in this case were, and are not disposed to comment at length upon the decision more than to say that the report has puzzled many legal minds. But, from what appears, it does not seem to have application to the facts of the case at bar. The one before us is a case involving a charge of crime committed by violence, the murder being perpetrated by means of a revolver, a deadly weapon, fired at the victim for the purpose and with the intent of killing him, and that purpose instantly accomplished. We are clearly of opinion that, whatever may have been the proper rule of law applicable to the Dresbach case, in this case it was not error for the court,

in connection with a full and correct charge defining murder in its several degrees, and assault and battery, to instruct the jury to ascertain and return the degree of the crime in case they found the defendant guilty as charged. The current of decisions in this state justifies the conclusion that an indictment good as to murder in the first degree embraces, necessarily, the lower grades of homicide, and that when this is the case presented, the jury may, if the facts proven warrant it, acquit of the graver offense and convict of the lower. *Stewart* v. *The State,* 5 Ohio, 241; *White* v. *The State,* 13 Ohio St., 569; *Heller* v. *The State,* 23 Ohio St., 582; *Howard* v. *The State,* 25 Ohio St., 399; *Marts* v. *The State,* 26 Ohio St., 162.

Other grounds of error are alleged, but we do not regard them as being of sufficent gravity to warrant space in dealing with them. Other reasons and grounds are also urged by the State, requiring an affirmance of the judgment, but we do not find it necessary to discuss them.

Finding no prejudicial error in the record the judgment will be

*Affirmed.*